**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

MANPOWERGROUP US, INC.,

    *Plaintiff,*

v.

    Case No. 1:26-cv-01085-MMM-RLH

TECHMETALS LLC,

    *Defendant.*

**ORDER & OPINION**

ManpowerGroup is a Wisconsin-based staffing agency. Technical Metals is an Illinois-based metal fabricator. In 2017, the two joined forces: Manpower agreed to recruit, interview, and place employees at Technical Metals's Illinois facility, in exchange for a fee. It seems the arrangement was prosperous for the first eight years. But things changed in February 2025, when Technical Metals was acquired by Manufacturing Revitalization Corporation of America (MCRA). The acquisition took place under ManpowerGroup's nose—it continued to place employees in Technical Metals's Fairbury, Illinois facility, unaware of any changes in its corporate structure.

What happened next isn't entirely clear. Apparently, a *different* metal fabricator—TechMetals, the sole defendant here—began operating out of Technical Metals's Illinois facility. (Understandably, it turns out, because TechMetals was an entity created by MCRA for the sole purpose of acquiring Technical Metals.) Unaware of the change, ManpowerGroup continued to send invoices to the facility, and TechMetals paid them—even though they were addressed to "Technical Metals." But

the payments stopped sometime between March and August 2025. All told, about $112,000 dollars of ManpowerGroup's invoices were left unfulfilled.

To recover the sum, ManpowerGroup brought this breach-of-contract suit against TechMetals in early March 2026. (Doc. 1.) Summons was issued, and TechMetals's registered agent was served on March 10, 2026. (Doc. 5.) Twenty-one days elapsed, and no response was filed. So the Court granted TechMetals a twenty-one day extension to answer the complaint. (Doc. 6.) That deadline came and went, so the Court granted another extension. (Doc. 7.) That deadline, too, elapsed, and ManpowerGroup moved for the entry of default. (Doc. 8.) The Court denied the motion for procedural reasons. (Doc. 9.) ManpowerGroup cured those defects and renewed its motion, and TechMetals's default was entered on May 29, 2026. (Docs. 11, 12.)

Two weeks later, TechMetals filed an appearance and moved to set aside the entry of default. (Doc. 15.) The motion sheds light on TechMetals's delay. On its telling, TechMetals is a wholly-owned subsidiary of MCRA, who handles all its legal matters. When TechMetals's agent was served, the summons and complaint was not forwarded to MCRA's management until "weeks later." TechMetals candidly describes this as an "internal administrative lapse." And because MCRA had not yet retained counsel nor filed an appearance, it was not aware that TechMetals had received two extensions of time. When MCRA learned of the entry of default, it says, it promptly retained legal counsel and filed its motion to set the default aside.

ManpowerGroup opposes the motion. It observes that TechMetals knew the lawsuit was coming by late January 2026, when ManpowerGroup sent a pre-suit

2

demand letter. And it argues that an "internal administrative lapse" is not a good enough excuse. The Court disagrees.

Rule 55 governs defaults and default judgments. It establishes two standards depending on how far the case has progressed. Before judgment is entered, it empowers courts to "set aside an *entry of default* for good cause"; after judgment is entered, courts may "set aside a final default *judgment*" only on the grounds that apply to relief from final judgments generally. Fed. R. Civ. P. 55(c) (emphasis added). The former, more lenient standard applies here because a default *judgment* has neither been sought nor entered.[1] *See Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007). Although difficult to define, "good cause" under Rule 55(c) does *not* mean a "good excuse for the defendant's inattention to the case"; it means "good cause for" the judicial action—that is, for setting aside the default. *Id.* (emphasis omitted). And because a default is effectively a "sanction" for failing to defend a lawsuit, the dispositive question here is whether the entry of default is proportional to TechMetals's foot dragging. *See id.*; *see also Bleitner v. Welborn*, 15 F.3d 652, 653 (7th Cir. 1994) ("A default judgment is a sanction, and a sanction should be proportionate to the wrong." (citation omitted)).

It's not. True, TechMetals failed to respond to the complaint—even after forty-two extra days to do so. And yes, the delay was caused by its own internal administrative error. But none of that warrants a $112,000 sanction. Indeed, that

---

[1] ManpowerGroup's opposition relies largely on cases applying Rule 60(b)'s more demanding standard. *See, e.g., Trs. of Constr. Indus. Welfare Fund of Cent. Ill. v. Rawdin Concrete Const., Inc.*, 237 F.R.D. 414, 414 (C.D. Ill. 2006). That authority is inapposite here.

amount is what ManpowerGroup's complaint seeks to recover. And the practical effect of denying TechMetals's motion would be to deprive it of the opportunity to defend the case on the merits. If TechMetals's default is allowed to stand, the next and only step would be for ManpowerGroup to move for default judgment, and TechMetals would be sidelined while damages are calculated. There is good cause not to let things unfold that way. *See Sims*, 475 F.3d at 868 (setting aside entry of default when defendant's conduct was "negligent" or "reckless at worst"). That is particularly true because TechMetals's two-month delay—though not trivial—has not prejudiced ManpowerGroup. *See id.* In other words, ManpowerGroup is not any less capable of prosecuting this action now than it was in April, when TechMetals's response was due. Combine all that with the general policy of resolving cases on the merits, and the conclusion becomes unavoidable. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009) (explaining that Rule 55(c)'s good cause standard is to be "liberally applied" because the federal rules favor "trial on the merits over default judgment").[2]

ManpowerGroup's remaining arguments are unpersuasive. First, it says that TechMetals's "efforts to characterize its default as non-willful is not persuasive on this record." How so? The mere fact that TechMetals moved to set aside the default is strong evidence that its default was not willful and that it intends to defend this case on the merits. And the fact that its motion came two weeks after default was

---

[2] To the extent a meritorious defense is required, *see Sun v. Bd. of Trs. of Univ. of IL*, 473 F.3d 799, 810 (7th Cir. 2007), TechMetals has carried its burden to offer one at this stage. It claims that Technical Metals, during MCRA's acquisition of it, breached the Asset Purchase Agreement by failing to disclose certain financials. It appears that question is currently the subject of separate litigation pending in this district. *See Technical Metals, Inc. v. Mfg. Revitalization Corp. of Am.*, No. 1:26-cv-01069-MMM-RLH (C.D. Ill. Sep. 12, 2025). That is enough—for now.

4

entered shows *some* level of diligence. ManpowerGroup also asserts that an "administrative lapse" does not constitute good cause. But that answers the wrong question. One paragraph earlier, ManpowerGroup concedes that Rule 55(c) requires "good cause" for *judicial action*—not for the defendant's error. Again, no definition of good cause justifies a $112,000 sanction for TechMetals's administrative lapse.

A final procedural point. In granting ManpowerGroup's motion for entry of default, the Court directed it to "file an appropriately supported motion for *summary* judgment no later than June 25, 2026." (Text Order dated May 28, 2026 (emphasis added).) That was an oversight. The Court intended to direct ManpowerGroup to file a motion for *default* judgment—the motion that naturally follows the entry of default. *See* Fed. R. Civ. P. 55(b). ManpowerGroup, understandably, heeded the Court's command and has since filed a motion for summary judgment. (Doc. 22.) In light of this Order, however, TechMetals will be given an opportunity to respond to ManpowerGroup's complaint. The Court will therefore direct the Clerk to strike ManpowerGroup's motion for summary judgment—without prejudice to refiling it. Should ManpowerGroup wish to renew that motion after TechMetals responds to the Complaint, it will be free to do so. The Court apologizes for the confusion.

## CONCLUSION

IT IS THEREFORE ORDERED that TechMetals's Motion to Set Aside Default, (Doc. 15), is GRANTED. The Clerk is DIRECTED to VACATE the May 29, 2026 default entered against TechMetals. The Clerk is further DIRECTED to STRIKE ManpowerGroup's, (Doc. 22), Motion for Summary Judgment. Finally, TechMetals is

ORDERED to file an answer or other responsive motion to ManpowerGroup's complaint on or by July 10, 2026.

*So ordered.*

Entered this 26th day of June 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge